## KUK *v.* BORYCZKA.

[No. 13,765. Filed January 31, 1930.]

*Sevald & Sevald,* for appellant.
*Loring & Loring,* for appellee.

NICHOLS, J.—Action on a foreign judgment rendered in the State of Illinois, the action on which the judgment was based being for breach of contract and designated as "Trespass upon the case upon promises."

Appellee filed an answer in general denial and a special answer pleading a discharge in bankruptcy, and afterwards filed his amended second paragraph of answer, also pleading a discharge in bankruptcy. Appellant

filed a demurrer to the amended second paragraph of answer, which demurrer was by the court overruled, and thereupon appellant filed reply in general denial.

The cause was submitted to the court for trial, which resulted in a judgment that appellant take nothing. Appellant filed his motion for a new trial, which was overruled, and this appeal followed.

Appellant relies for reversal on the court's action in overruling his demurrer to the amended second paragraph of answer and in overruling his motion for a new trial.

The amended second paragraph of answer admits that, on July 10, 1925, appellant recovered a judgment in the circuit court of Cook county, Illinois, against appellee for $4,000. A copy of appellant's complaint in said action is made a part of the answer, by which it appears that appellant, for some time prior to June, 1921, was in the employ of one Golebiewski, who was at that time the owner of and conducting a drug store in the city of Chicago, of which he desired to dispose; that Golebiewski offered to sell the said store to appellant for $8,000; that appellant, after some negotiations with Golebiewski, went to Indiana and had an interview with appellee and told him of the offer of sale from Golebiewski, and of his (appellant's) desire to purchase the business, and, at that time, appellee stated to appellant that he would assist him in purchasing from Golebiewski, and that appellant might repay him as soon as he might be able to do so out of the profits of the business, or any other moneys or property which he might obtain; that, pursuant to their conversation and arrangement, after said interview, appellee went to the city of Chicago and took up with appellant and Golebiewski negotiations for the purchase by appellant of the business carried on by Golebiewski, at the place aforesaid that, during the interview with Golebiewski, it was

arranged that $6,000 should be paid in cash and a chattel mortgage given upon the assets in said store for $2,000, the balance of said purchase price; that appellee, at the time, stated that he would take the bill of sale from Golebiewski of the assets in said store in appellee's name, and hold the same for the use and benefit of appellant, and that, as soon as appellant had paid the amount due on the chattel mortgage and the further sum of $2,000, that is to say, one-half of the purchase price, or $4,000, together with interest at seven per cent per annum, appellee would immediately make a bill of sale and reconvey to appellant said store, and take back from him a chattel mortgage for the remainder of the purchase price; that appellee paid over $6,000 to Golebiewski and delivered to him two notes, each for $1,000, secured by a chattel mortgage; that appellant immediately went into possession of said business, in the absolute management and control of the same, and appellee did not, at any time, have anything to do therewith; that appellant immediately set about making payments on account of his purchase of said store, and thereafter, within a few months after said purchase, had paid, on account thereof, $3,345, and was ready and willing and offered to pay the balance, according to said contract, to appellee, but appellee, in violation of his said agreement, willfully, maliciously and fraudulently, on March 23, 1922, conveyed away said store to one Stephen Bradel, receiving therefor $10,000, and, although appellant was ready, able and willing, and offered to carry out his agreement with appellee, and pay to him the money in accordance therewith, yet appellee did not, nor would he then or at any time, accept from appellant the part purchase price, as aforesaid, but refused so to do, to the damage of appellant of $10,000. The complaint was much longer, but this is sufficient to show the nature of the action on which the judgment was based. Such amended second

paragraph of answer further avers that, on April 9, 1927, appellee was adjudged a bankrupt by the district court of the United States for the District of Indiana, sitting at Hammond, and that appellant was listed as a creditor of appellee in the petition filed by appellee in said bankruptcy, as being the owner of the judgment set forth; that, on January 18, 1928, appellee was duly discharged in bankruptcy by said court; that the claim sued upon is a claim dischargeable in bankruptcy, and that appellee has been discharged in bankruptcy; and that the judgment of appellant is not enforceable against appellee.

The only question involved in this action and which is raised both by the demurrer filed by appellant to appellee's second paragraph of answer and by appellant's motion for a new trial is whether the judgment taken against appellee in the circuit court of Cook county, Illinois, is dischargeable in bankruptcy.

Appellant contends that the judgment was founded on fraud and was for the willful and fraudulent conveyance of certain assets of a store, and is, therefore, not dischargeable. Appellee contends that the original action was for the breach of a contract, and is dischargeable.

According to §9601 U. S. Comp. Stat. 1916, p. 11239 (11 USCA §35), all provable claims against a bankrupt estate are dischargeable in bankruptcy, with some exceptions. The only exception upon which appellant relies is phrased in the statute as follows: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as  .  .  . (2) *are liabilities for obtaining property by false pretenses or false representations.*" (Our italics.)

Before the enactment of this statute, it was held that, if a cause of action grows out of contract, and whatever fraud appears was involved in the unlawful application or diversion of the proceeds of sale, *and if there was no fraud in the inception of the*

*contract*, then *a judgment based on such an action is dischargeable in bankruptcy.* A fraud must be in the inception of the contract. A judgment founded on a debt growing out of a contract where fraud is but an incident and not the creative power thereof is dischargeable. *Landgraf* v. *Griffith* (1908), 41 Ind. App. 372, 83 N. E. 1022; Collier, Bankruptcy (8th ed.) p. 319; *State, ex rel.,* v. *Beck* (1911), 175 Ind. 312, 93 N. E. 664; *Nelson* v. *Petterson* (1907), 229 Ill. 240, 82 N. E. 229, 13 L. R. A. (N. S.) 912, 11 Ann. Cas. 178.

In the Landgraf case, this court held: "The fraud should relate to the obtaining, at the creation of the debt, of the money or property by false or fraudulent representations, the original relation between the parties being a contractual one. It 'must exist in the creation of the debt, as subsequent fraudulent conduct is insufficient.' Brandenburg, Bankruptcy (3d ed.) §435. 'If the original debt arose in contract and the fraud was but an incident of the debt and not its creative power, the debt is merged in the judgment and the bankrupt released thereafter.' Brandenburg, Bankruptcy (3d ed.) §435. See, also, Collier, Bankruptcy (5th ed.) p. 478."

It is clear that the debt on which the judgment here in suit was based was both by the statute and by the well-established rule of law, as appears by the above cited cases, dischargeable in bankruptcy.

The court did not err in overruling appellant's demurrer to the amended second paragraph of answer nor in overruling appellant's motion for a new trial.

Judgment affirmed.